BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE: AT&T INC. CELLULAR CUSTOMER DATA SECURITY BREACH LITIGATION | ) ) ) ) ) | MDL No. 3124 |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS CHRISTINA FORDHAM, ALLEN GATERS, AND ANGELA HAUGHTON TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multidistrict Litigation Rule of Procedure 6.2(e), Plaintiffs Christina Fordham, Allen Gaters, and Angela Haughton ("Plaintiffs") in the action *Fordham, et al. v. Snowflake Inc., et al.*, Case No. 2:24-cv-00092-BMM, filed in the U.S. District Court for the District of Montana, submits this response to the pending Motion for Transfer of Actions to the Northern District of Georgia Pursuant to 28 U.S.C. § 1407 for Consolidated or Coordinated Pretrial Proceedings ("*AT&T Motion*"), ECF No. 7.

Plaintiffs support the request for coordination or consolidation pursuant to 28 U.S.C. § 1407; but assert that the actions that are the subject of the *AT&T Motion* should not be transferred to the Northern District of Georgia, and instead should be consolidated as set forth in a parallel motion for centralization and transfer filed in *In re Snowflake Data Breach Litigation*, MDL No. 3126. *See* Plaintiff Emmanuel Chaidez's Corrected Motion for Transfer and Centralization of Related Actions to the District of Montana Pursuant to 28 U.S.C. § 1407 for Consolidated Pretrial Proceedings, MDL No. 3126, ECF No. 3 (J.P.M.L. 2024) ("*Snowflake Motion*").

All of the actions implicated by the *AT&T Motion* assert claims against AT&T for the data breach announced July 12, 2024, involving the April 2024 disclosure of the phone records of almost all current and former AT&T customers, and anybody an AT&T customer called or texted; however the breached phone records were stored by AT&T on a third-party cloud storage platform,

1

Snowflake, Inc. AT&T is one of an estimated 165 of Snowflake customers that were impacted by data exfiltration in April 2024 (the "Snowflake Data Breach"). As of the date of the *Snowflake Motion*, at least 43 class actions had been filed asserting claims involving the Snowflake Data Breach against at least seven defendants, including AT&T entities. As of the date of this response, 68 class actions have been filed.

The cases that are the subject of the *AT&T Motion* and the *Snowflake Motion* arise from the larger Snowflake Data Breach, and as such are likely to raise overlapping issues. In addition, indemnification of Snowflake customers may be a factor. For these reasons, Plaintiffs respectfully request that the Panel coordinate all related cases implicated by the *AT&T Motion* with all related cases implicated by the *Snowflake Motion*, and all such cases be transferred to the U.S. District Court for the District of Montana for coordinated or consolidated proceedings.

I. BACKGROUND

There is no dispute that the cases underlying the *AT&T Motion* allege claims arising from the April 2024 exfiltration of the phone records from the time period of May 1, 2022 to October 31, 2022 and January 2, 2023. This exfiltration affected nearly all AT&T's current and former customers, as well as anybody the AT&T customers called or texted. The number of impacted customers is estimated to be 100 million in total. The exfiltrated data includes phone numbers, call times, call durations, cell site identification numbers, and other sensitive information (the "Call Logs")—a highly personal record of each customers communications. AT&T stored the Call Logs on Snowflake's cloud-based systems which, beginning in April 2024, were targeted by cybercriminals that gained access to and exfiltrated data from an estimated 165 Snowflake customer accounts.

On June 12, 2024, American cybersecurity firm and Google subsidiary Mandiant announced that in the course of its "incident response engagements and threat intelligence"

collections it had identified a threat campaign targeting Snowflake customer database instances with the goals of data theft and extortion.[1] According to Mandiant, UNC5537, a financially motivated threat actor, systematically compromised Snowflake customer instances using stolen customer credentials and advertised victim data for sale on cybercrime forums.[2] On May 22, 2024, Mandiant contacted Snowflake and together began notifying potential victims, ultimately notifying approximately 165 potentially exposed organizations—including AT&T, Ticketmaster, Advance Auto Parts, QuoteWizard—that their server instances had potentially been compromised and customer data exposed in the Snowflake Data Breach.

The Snowflake Data Breach is an example of a "hub-and-spoke" data breach. Snowflake's Montana based multi-cloud data warehousing platform is at the hub of the breach, while its approximately 165 impacted customers, including AT&T, are the spokes.

At the time of the *Snowflake Motion*, there were approximately 43 cases filed across the country which implicate the Snowflake Data Breach ("Snowflake Actions").[3] As of the date of this filing, an additional 25 putative class actions asserting claims arising from the Snowflake Data Breach have been filed seeking redress for the exposure of data including Call Logs, names, addresses, account information, identifiers such as Social Security, driver's license, and government identification numbers, dates of birth, email addresses, phone numbers, and payment data. Of the 68 actions filed, 9 actions name both Snowflake and AT&T.

---

[1] *See* Mandiant, *UNC5537 Targets Snowflake Customer Instances for Data Theft and Extortion* (June 10, 2024), https://cloud.google.com/blog/topics/threat-intelligence/unc5537-snowflake-data-theft-extortion.
[2] *Id.*
[3] *See* Corrected Schedule of Actions, *In re Snowflake Data Breach Litigation*, ECF No. 3-2 (MDL No. 3126) ("Schedule of Actions").

## II. ARGUMENT

### A. Transfer Under 28 U.S.C. § 1407 for Consolidation and Coordination Is Appropriate Because There Are Common Questions of Fact.

The *AT&T Motion* seeks to transfer, consolidate, and coordinate for pretrial purposes four (4) actions pending in three (3) different federal Districts, along with other tag-alongs ("AT&T Actions"), to the Northern District of Georgia pursuant to 28 U.S.C. § 1407. *AT&T Motion* at 1. The AT&T Actions arise from a common nucleus of fact grounded in allegations that AT&T failed to secure customers' Call Logs stored on Snowflake's cloud-based data warehouse. *Id.* at 1–2. As such, the AT&T Actions involve overlapping claims, classes, legal issues and causes of action with the Snowflake Actions. Thus, while Plaintiffs agree with the *AT&T Motion* that centralization is appropriate, Plaintiffs assert that consolidation of all of the Snowflake Actions is necessary to prevent duplicative discovery, eliminate the possibility of conflicting pretrial rulings, and conserve judicial resources.

The *In Re: MOVEit Customer Data Security Breach Litigation* provides a model for addressing hub-and-spoke data breaches. *MOVEit* consolidated over 100 actions in 22 districts arising from the exfiltration of PII due to a vulnerability in the MOVEit cloud file transfer service, a product of defendant software company, Progress (the "hub"), which impacted MOVEit users (the "spokes"), who used its cloud file transfer services and the over 55 million customers of the spokes. *In Re: MOVEit Customer Data Security Breach Litigation*, MDL No. 3083, 699 F.Supp.3d 1402, 1405 (J.P.M.L. 2023). As with the Snowflake Actions, the *MOVEit* actions asserted claims against many of Progress's customers, but the Panel determined that because the "MOVEit vulnerability is at the core of all of the cases . . . disentangling the allegations against Progress[] from the allegations against other defendants in the same case seems impracticable, if not impossible." *Id.* at 1405–1406. "[W]e are of the opinion that the parties can obtain significant

efficiencies by placing all actions concerning the vulnerabilities in the MOVEit software before a single judge." *Id.* at 1406.

Transfer and centralization of the Snowflake Actions in a single district (rather than separating spoke AT&T Actions to a separate district) will promote efficiency and conserve judicial resources by eliminating the possibility of duplicative discovery and inconsistent rulings and provide a single forum to which future filed tag-along actions can be transferred. Further, it will avoid a circumstance where Snowflake is subject to multiple MDLs arising from the Snowflake Data Breach. For these reasons, the Panel should transfer and consolidate the instant cases in a single district. *See* 28 U.S.C. § 1407.

### B. Balancing the Factors, District of Montana Is the Most Appropriate Transferee Forum.

As set forth in the Snowflake Motion, Plaintiffs support transfer and centralization of the Snowflake Actions, including the AT&T Actions in the United States District Court for the District of Montana.[4] The events giving rise to the Snowflake Actions happened in Montana. Snowflake is headquartered in Montana, offer its services from Montana, and maintains its servers in Montana.[5] Snowflake's witnesses, documents, and forensic evidence are relevant to all of the Snowflake Actions. Because Montana is the hub of this hub-and-spoke data breach, transfer to Montana is in the interest of all parties—including actions that name only a spoke defendant. "[I]n deciding the question of centralization, [the Panel] must consider the needs of all parties and view the litigation as a whole." *In re MOVEit Customer Data Sec. Breach Litig.*, MDL No. 3038, 2023 WL 6456749, at *3 (J.P.M.L. 2023) (consolidating 101 data breach actions across 22 districts actions in Massachusetts, where MOVEit is headquartered).

---

[4] *See Snowflake Motion*, ECF No. 3-1 at 4–11.
[5] *See id.* at 7–9.

5

As of the filing of the *Snowflake Motion*, all but one pending action was filed in the District of Montana.[6] As of the date of this filing, there are 23 pending actions filed in the District of Montana, and another 45 across 12 districts, 17 of which name both Snowflake and a spoke defendant. Given the distribution of Snowflake Actions across 13 districts, centralization is necessary "to avoid the possibility of inconsistent pretrial rulings, particularly with respect to class certification." *In re 23andMe, Inc., Customer Data Sec. Breach Litig.*, MDL No. 3098, 2024 WL 156923, at *1 (J.P.M.L. 2024).

District of Montana is also accessible to parties across the United States, given its central location, and is thus the most convenient forum for coordination or consolidation of the Snowflake Actions.

Finally, for the 12-month period ending March 31, 2024, the District of Montana had only 576 civil actions pending, with the active district judges carrying a case load of fewer than 200 cases each.[7] Further, there are no MDLs currently assigned to the District of Montana, while many of the districts where Snowflake Actions have been filed have pending MDLs, including *In re: Paragard IUD Products Liability Litigation*, MDL No. 2974 (pending in N.D. Ga.), *In re: Consumer Vehicle Driving Data Tracking Litigation*, MDL No. 3115 (pending in N.D. Ga.), *In re: Ford Motor Co. DPS6 PowerShift Transmission Products Liability Litigation*, MDL No. 2814 (pending in C.D. Cal.), *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 3052 (pending in C.D. Cal.), and *In re: Stanford Entities Securities*

---

[6] *See* Schedule of Actions.
[7] United States Courts, *Table C-1 U.S. District Courts–Civil Federal Judicial Caseload Statistics* (Mar. 31, 2024), https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2024/03/31.

*Litigation*, MDL No. 2099 (pending in N.D. Tex.). This too suggests that the District of Montana is the most appropriate transferee forum.

## III. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Panel grant the Movant's request for coordination or consolidation pursuant to 28 U.S.C. § 1407 but, for the reasons set forth herein and in the *Snowflake Motion*, Plaintiffs respectfully request that the Panel deny the request to centralize the cases in the Northern District of Georgia and instead centralize the Related Cases in the District of Montana and designate the Honorable Brian Morris, Chief Judge of the District of Montana, as the transferee judge.

Dated: September 4, 2024

Respectfully submitted,

*/s/ Lesley E. Weaver*
Lesley E. Weaver
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

***Counsel for Plaintiffs Christina Fordham, Allen Gaters, and Angela Haughton***